## Martini, Jr., et al. v. Olyphant Borough School District

*Ernest D. Preate* and *Wm. B. Landis*, for plaintiffs.
*John R. Lenahan*, for defendant.

HOBAN, P. J., December 1, 1952.—This is an action by Dominick Martini, a minor, and his parents for damages for personal injuries and the expenses incident to the treatment thereof, incurred by minor plaintiff while engaged as a player on the Olyphant High School football team in an interscholastic game between the Olyphant High School football team and the Blakely High School football team on November 11, 1950. Both schools are public high schools, in the Pennsylvania public school system. The game was played as a public exhibition in the Blakely stadium, which was viewed by some 2,500 spectators, admission fees were charged, concessions for the sale of popcorn and candy were in operation, and the details of the game reported by radio broadcasting from a Carbondale radio station.

The minor plaintiff, who had received an injury to his nose in a previous game, had notified the head coach of the Olyphant High School team before he entered as a player in the game of November 11, 1950, that the helmet issued to him had been broken, the straps torn and defective, and the noseguard section had been removed or torn off, and that his nose was still sore from the previous injury, and asked for a new protective helmet and noseguard. In spite of his notice and request, minor plaintiff was directed by the coach to go into the game without any new head gear; he thereupon entered the game with the old defective head gear and during the course of play his helmet was knocked from his head, he was kicked or hit on the head and nose, his nose was broken and he was rendered unconscious.

The complaint avers that personal notice of the claim was given by plaintiff to defendant school district immediately following the injury sustained by minor plaintiff, and that thereafter plaintiffs presented their claim in person before the Board of School Directors of the Olyphant School District at a meeting of the board within a period of two months following the injuries; that the school board entered into negotiations with plaintiffs looking to a settlement, but that the board now refuses to make any payment or offer settlement adequate to the damages sustained.

Defendant enters preliminary objections in the nature of a demurrer, which may be grouped under three heads:

1. Plaintiffs failed to file formal written notice with the school district of the claim within six months of the date of the injury, nor have they entered this action by leave of court on excuse shown why such notice should not have been filed within the prescribed time, all as required by the Act of July 1, 1937, P. L. 2547, 53 PS §2774.

2. That the school district, insofar as it was responsible for conducting the game in question, was operating as an agent of the Commonwealth within its governmental function in the conduct of an educational activity and consequently is not responsible for the negligence of its employes or officers in the performance of governmental functions, and that it cannot under the law divert educational funds to pay tort claims.

3. That minor plaintiff voluntarily participated in the game and as a contestant accepted the risks of injury incident thereto.

We are of the opinion that the complete purpose of the Act of 1937, supra, requiring notice to school districts of the presentation of a claim based upon the negligence of an employe, was served by the formal presentation of the claim to the board in session. The averment in the complaint that the board entered upon negotiations with plaintiffs, looking toward a settlement of the claim, is sufficient excuse to warrant the court in permitting a claim to be filed after the six-month period. The courts have been reasonably liberal in interpreting the notice provisions of the statute, so long as the municipality had in fact received adequate notice on which to base an investigation and discover the facts pertinent to the alleged negligence. If there is any question about the matter, we hereby grant leave nunc pro tunc to plaintiffs to file the complaint herein.

Most of the objections to the liability of the school district for negligence of its officers or employes, occurring while in the conduct of their educational activities, have been considered in the case of Hoffman v. Scranton School District, 67 D. & C. 301. There we held that a school district, while obviously an agent of the State for the conduct of educational services which it is required or permitted to provide under the

Constitution of 1873 and the various school laws enacted by the legislature, is in fact a municipal corporation because made so by statute; that as such, like other municipal corporations, it may engage in proprietary as distinguished from governmental functions and when it is engaged in such proprietary activities is liable for negligence. In that case also we rejected the theory that a school district was an institution purely for public charity as considered by the appellate courts in some of the early cases, because the Constitution of 1873 definitely establishes the provision of an education for children as a duty of the State and no longer a matter of grace, which is the essence of the concept of a charity. In the Hoffman Case, supra, the question arose as to whether the school district could be held liable for injuries received by a spectator, who had paid admission to an interscholastic football game and was hurt when a temporary stand in which he was sitting collapsed. We there held that the operation of a contest with all the incidents of commercial exploitation, at least so far as the paid spectators were concerned, was a proprietary rather than a commercial activity; that the school district ought to take the same precautions against injury through negligence as any commercial enterpriser would take.

Here, however, we have an entirely different situation. Plaintiffs argue that the theory of the Hoffman case ought to be extended to the player participant in such a game, as well as to the spectator who pays his admission to the publicly presented spectacle. No case directly comparable seems to have been presented to our appellate courts, but we did acknowledge in the Hoffman case that there is opinion to the effect that the conduct of intramural and interscholastic games is certainly within the legitimate scope of school district educational activities and so essentially a governmental function. The question is directly presented

here as to whether the character of the contest itself should be changed from a classification within the field of governmental activities to that of proprietary activities simply because it is presented as a public spectacle for which the spectators are charged admission, and are offered other commercial features of such spectacles. We cannot agree with this concept.

It is a matter of public knowledge that a good many undesirable features seem to have attached to the conduct of interscholastic, as well as intercollegiate athletic contests. Nevertheless, such contests in themselves we think are clearly within the field of legitimate educational activities; they offer a controlled outlet to the unbounded energy and activity of youth as developed and encouraged in a program of physical education. They are desirable from the standpoint of encouraging within student bodies a widespread interest in such education and serve as proper tests of accomplishment in a particular educational field. So far as the players themselves are concerned, their coaches, managers, attendants and those engaged in providing the necessary facilities for the playing of the game, the field of educational and therefore governmental activity is broad enough to include them within its boundaries. We, therefore, distinguish the contest itself as an educational activity from the presentation of it to spectators on a commercial basis as a proprietary activity. On this theory there can be no liability on the school district for the negligent failure of the district employes to provide to the player the adequate and customary equipment which a player ought to have to protect himself against foreseeable injury.

On the pleadings, we are unwilling to state that this particular player voluntarily assumed the risk of the game and so became subject to the usual rule that one who assumes a risk must bear the consequences. It is

undoubtedly sound law that a voluntary participant in an athletic sport cannot complain of injuries incurred from the hazards of the game. The theory of defendant here seems to be that this player had an option of refusing to play if he was not provided with the customary and adequate protective equipment. There is no doubt that he could not complain if, having been provided with the customary and adequate equipment, he had received a similar injury, which might have occurred despite the equipment, but it is at least debatable as to whether the legal cause of this accident was the hazard of the game or the negligence of the school district employe in failing to provide the adequate equipment. The answer to this will have to await the proof of facts. It is also debatable as to whether or not the usual disciplinary authority of the coach, the pressure of school spirit, the probable odium attached to a refusal to play, both by his fellow-players and his schoolmates, might not have robbed him of volition under the circumstances. We think the question is one to be decided by a trial judge or jury as the facts may require after the evidence is in.

Our decision that there is no liability here is based solely on the ground that the conduct of the game itself, so far as the players and those responsible for the control of the players therein are concerned, was strictly a governmental activity and the school district has no liability for the torts of its agents engaged in such an activity.

We point out that plaintiffs here are not without remedy, since the Public School Code of March 10, 1949, P. L. 30, sec. 511(f), as amended, authorized appropriation of money by the school district for the payment of medical or hospital expenses incurred as the result of participation in athletic events or games, practice or preparation therefor, and for the purchase of accident insurance in connection with such partic-

ipation. This section is a recognition of the responsibility of school districts for such legitimate expenses. It does not, of course, provide for the recovery of damages other than medical and hospital expenses which might otherwise be recovered in an action for negligence, but plaintiffs certainly may claim for the direct medical and hospital expenses proveable as a result of the injury to minor plaintiff.

Now, December 1, 1952, preliminary objections nos. 4 and 5 filed by defendant are sustained. The other preliminary objections are dismissed. Plaintiffs are granted permission to amend the complaint so as to plead a cause of action for medical and hospital expenses incurred as a result of the injury to minor plaintiff, incurred in the game of November 11, 1950, if they so desire, within 20 days from the date hereof; otherwise the complaint to be dismissed and judgment entered for defendant.